**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

```
_____
                               )
GIOVANNI LANZA and MARIANTONIA )
LANZA,                         )
                               )
              Plaintiffs,      )
                               )       Civil Action
       v.                      )       No. 18-10859-PBS
                               )
FINANCIAL INDUSTRY REGULATORY  )
AUTHORITY (FINRA),             )
                               )
              Defendant.       )
_____)
```

**MEMORANDUM AND ORDER**

September 25, 2018

Saris, C.J.

**INTRODUCTION**

Plaintiffs Giovanni Lanza and Mariantonia Lanza initiated an arbitration through Defendant Financial Industry Regulatory Authority ("FINRA")'s Office of Dispute Resolution against their securities brokers as part of a dispute involving mismanagement of their accounts. After a three-day hearing, the arbitrators summarily dismissed Plaintiffs' claims in a two-sentence decision. Plaintiffs sued FINRA for breach of contract, alleging that the arbitrators' failure to issue a reasoned explanation for their decision constituted a breach of the implied covenant of good faith and fair dealing. Plaintiffs request an order

1

compelling FINRA to refer their dispute back to the arbitrators to write a full decision explaining their dismissal of Plaintiffs' claims. They also seek $200,000 in damages.

For the reasons set forth below, the Court **ALLOWS** FINRA's motion to dismiss (Docket No. 9).

## FACTUAL BACKGROUND

The following factual background comes from the complaint and attached documents and must be taken as true at this stage. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014).

### I. Parties

Plaintiffs are an elderly married couple living in Campton, New Hampshire and Cambridge, Massachusetts. Both are 91-year-old former professors. Defendant FINRA is a private regulatory organization headquartered in New York and Washington, D.C. that monitors and regulates the financial industry and the relationship between financial institutions and their customers.

This action arises from a dispute between Plaintiffs and their former securities brokers, Ameriprise Financial Services, Inc. ("Ameriprise") and Richard Ewing ("Ewing"). Ameriprise is a securities brokerage company headquartered in Minnesota. Ewing is employed at Ameriprise as a securities broker in its office in Palm Beach Gardens, Florida. Ameriprise and Ewing managed two brokerage accounts of over $800,000 in total assets for

Plaintiffs from 2006 to 2014. Neither Ameriprise nor Ewing is a party to this action.

## II. Dispute with Ewing and Ameriprise

In 2015, Plaintiffs filed suit against Ewing and Ameriprise in the United States District Court for the District of Massachusetts, alleging that Ewing and Ameriprise had mishandled their brokerage accounts. They contended, inter alia, that Ewing had fraudulently convinced them to move their accounts when he transferred in 2006 from Merrill Lynch to H&R Block (which Ameriprise subsequently acquired), failed to administer their accounts in line with their stated goals, carelessly managed their accounts, was nonresponsive to their concerns, and lied about the investments he made on their behalf and the performance of their investment portfolio. They claimed losses of over $400,000 for negligence, breach of contract, and fraud, as well as violations of federal securities law.

After Ameriprise and Ewing notified Plaintiffs that they had signed an arbitration agreement when they opened their accounts, Plaintiffs consented to the dismissal of their federal court action. Plaintiffs and Ewing then submitted their dispute to arbitration with FINRA's Office of Dispute Resolution.[1] In

---

[1] Ameriprise was not a party to this first arbitration.

December 2015, they attended mediation in Concord, New Hampshire and entered into a settlement agreement for $52,500.

### III. Contested Arbitration

Shortly thereafter, Ewing refused to comply with the settlement agreement. Plaintiffs therefore filed a new statement of claim against Ewing and Ameriprise for arbitration with FINRA in June 2016, alleging similar claims based on the same misconduct. To submit their dispute for arbitration, Plaintiffs signed the "FINRA Arbitration Submission Agreement" ("Submission Agreement"). In the Submission Agreement, Plaintiffs acknowledged that they had "read the procedures and rules of FINRA relating to arbitration" and agreed "to be bound by these procedures and rules." In the same vein, they agreed to submit their claim to arbitration "in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure" and to conduct the arbitration "in accordance with the FINRA Code of Arbitration Procedure." Ewing and Ameriprise signed the same agreement a few months later. Plaintiffs paid $1,700 in filing fees and agreed to pay half of the arbitration charges, which exceeded $10,000.

Before the arbitration hearing, Plaintiffs requested that the arbitrators write a reasoned decision explaining the award. Ameriprise did not agree to this request. The arbitrators declined to issue such a decision based on FINRA Rule 12904(g),

4

which requires an "explained decision . . . stating the general reason(s) for the arbitrators' decision" only if "all parties jointly request" it.[2] FINRA Code of Arbitration Procedure for Customer Disputes § 12904 (2018), http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4192.

A panel of three arbitrators heard the dispute between Plaintiffs and Ameriprise in Boston over three days in December 2017.[3] In its written award after the hearing, the arbitrators listed Plaintiffs' causes of action and requested relief and provided a brief procedural history of the claim. The

---

[2]   FINRA Rule 12904(g) reads in full:

(1) This paragraph (g) applies only when all parties jointly request an explained decision.
(2) An explained decision is a fact-based award stating the general reason(s) for the arbitrators' decision. Inclusion of legal authorities and damage calculations is not required.
(3) Parties must make any request for an explained decision no later than the time for the prehearing exchange of documents and witness lists under Rule 12514(d).
(4) The chairperson of the panel will be responsible for writing the explained decision.
(5) The chairperson will receive an additional honorarium of $400 for writing the explained decision, as required by this paragraph (g).
(6) This paragraph (g) will not apply to simplified cases decided without a hearing under Rule 12800 or to default cases conducted under Rule 12801.

[3]   Before the hearing, the arbitrators resolved the claims against Ewing by enforcing the 2015 settlement agreement.

arbitrators then ruled as follows: "After due deliberation, the Panel concluded that [Plaintiffs] had failed to sustain their burden of proving any of the various claims asserted in the Statement of Claim. The Panel took particular note of [Plaintiffs'] failure to establish any damages by any competent or credible evidence." The arbitrators did not provide any additional explanation for their decision. Based on these findings, the arbitrators dismissed all of Plaintiffs' claims.

After entry of the arbitrators' decision, Plaintiffs contacted both FINRA and the arbitrators to seek the reasoning behind the decision. They reached one of the arbitrators, who declined to speak with them without FINRA's permission. FINRA refused to allow Plaintiffs to speak with the arbitrators in accordance with its rules. See FINRA Code of Arbitration Procedure for Customer Disputes § 12211(h) (2018), http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4117 ("Parties may not communicate orally with any of the arbitrators outside the presence of all parties.").

## LEGAL STANDARDS

### I. Standard of Review

In analyzing whether a complaint states a claim sufficient to satisfy Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must set aside any statements that are merely conclusory and examine only the pleader's factual

allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The Court may also consider documents attached to the complaint. See Foley, 772 F.3d at 71-72. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

## DISCUSSION

### I. Arbitral Immunity

As a threshold matter, FINRA argues that the complaint should be dismissed because, as an arbitral forum, it is entitled to arbitral immunity for its conduct of the arbitration. In some circumstances, an organization that sponsors arbitrations is entitled to immunity from civil liability for the administrative tasks it performs, insofar as they are "integrally related to the arbitration." New Eng. Cleaning Servs., Inc v. Am. Arbitration Ass'n, 199 F.3d 542, 545 (1st Cir. 1999) (holding that choosing arbitrators, billing for services, and scheduling hearings "were sufficiently related to the arbitration to be protected by immunity"). The immunity likely does not, however, cover all disputes with an organizing body. See Caudle v. Am. Arbitration Ass'n, 230 F.3d 920, 922

7

(7th Cir. 2000) (expressing doubt that arbitral immunity should bar recovery of fees from an arbitrator who fails to provide the promised arbitration services at all). Here, the challenge to the failure to provide sufficient reasons for an arbitration award, rather than a failure to issue any award at all, appears to be well within FINRA's arbitral immunity.

## II.  Implied Covenant of Good Faith and Fair Dealing

Even if arbitral immunity were inapplicable, Plaintiffs' argument that FINRA committed a breach of contract and the implied covenant of good faith and fair dealing when the arbitrators declined to provide a reasoned explanation for their decision fails as well. The Submission Agreement bound FINRA to conduct the arbitration in accordance with its own rules. Its rules explicitly require an explained decision "only when all parties jointly request" one. FINRA Rule 12904(g), supra. Without the consent of both parties, the FINRA rules allow arbitrators to provide a reasoned decision for the award but do not require them to do so. See FINRA Rule 12904(e)-(f), supra (omitting a reasoned decision from the list of requirements for a written award and stating that "[t]he award *may* contain a rationale underlying the award" (emphasis added)). Here, interpreting the plain language of the rules, FINRA did not breach its contractual obligation because Ameriprise, the other party to the arbitration, did not agree to Plaintiffs' request

8

for a reasoned decision. Without Ameriprise's consent, the FINRA rules imposed no duty to provide it.

Recognizing this problem with their legal theory, Plaintiffs allege that FINRA's failure to provide a reasoned decision breached the implied covenant of good faith and fair dealing. They contend that they had a reasonable expectation that the arbitrators would provide a reasoned decision that would permit them to challenge the dismissal of their claims in federal court.

Under Massachusetts law,[4] "[t]he covenant of good faith and fair dealing is implied in every contract." Weiler v. PortfolioScope, Inc., 12 N.E.3d 354, 361 (Mass. 2014) (quoting Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004)). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Rests., Inc., 805 N.E.2d at 964. The implied covenant "provides 'that neither party shall do anything which will have the effect

---

[4] The interstate nature of this dispute raises a question as to which state's law governs Plaintiffs' breach of contract claim. Plaintiffs live in Massachusetts and the arbitration took place in Boston, so the Court assumes without deciding that Massachusetts law applies. See Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005) ("[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls.").

of destroying or injuring the right of the other party to receive the fruits of the contract.'" A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth., 95 N.E.3d 547, 560 (Mass. 2018) (quoting Weiler, 12 N.E.3d at 361). A defendant breaches the implied covenant when it "violates the reasonable expectations" of the other party. Id. (quoting Weiler, 12 N.E.3d at 362).

It is axiomatic that "the implied covenant of good faith and fair dealing cannot create rights and duties that are not already present in the contractual relationship." A.L. Prime, 95 N.E.3d at 561 (quoting Eigerman v. Putnam Invs., Inc., 877 N.E.2d 1258, 1265 (Mass. 2007)). Nor can a party invoke the implied covenant to contradict the express terms of the contract. See, e.g., Bos. Med. Ctr. Corp. v. Sec'y of the Exec. Office of Health & Human Servs., 974 N.E.2d 1114, 1126-27 (Mass. 2012) (refusing to find a breach of the implied covenant where the parties agreed in the contract to certain rates for reimbursement for medical services and the defendant refused to pay higher amounts). Here, Plaintiffs are seeking to add a new obligation that is nowhere to be found in the contract and in fact expressly contradicts its terms. The implied covenant cannot be invoked to create this new obligation. And, given the express language in the FINRA rules about explained decisions, Plaintiffs' expectation that the arbitrators would produce a

reasoned decision, even if bona fide, was not reasonable and is not protected by the implied covenant.

Plaintiffs suggest that they had no choice but to sign the Submission Agreement and did not read through the FINRA rules in advance. Insofar as they contend that the agreement is invalid as a contract of adhesion, this argument is unpersuasive. Contracts of adhesion are unenforceable only if "they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." McInnes v. LPL Fin., LLC, 994 N.E.2d 790, 798 (Mass. 2013) (quoting Miller v. Cotter, 863 N.E.2d 537, 547 n.16 (Mass. 2007)). It is troubling that FINRA charges so much in fees and costs for essentially a thumbs-up, thumbs-down opinion. Plaintiffs are understandably concerned that one side can refuse to consent to a reasoned decision. Still, the procedure does not rise to the level of unconscionability. "It is well-established that arbitrators are not generally required to give the reasoning behind an award." Rogers v. Ausdal Fin. Partners, Inc., 168 F. Supp. 3d 378, 387 (D. Mass. 2016); accord Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 244 n.4 (1962) ("Arbitrators generally have no obligation to give their reasons for an award."); Zayas v. Bacardi Corp., 524 F.3d 65, 70 (1st Cir. 2008) ("Although arbitrators frequently elect to explain their decisions in written opinions, they are under no compulsion to do so."). Even without a full

written decision the losing party can seek the limited judicial review permitted under the Federal Arbitration Act. See, e.g., Rogers, 168 F. Supp. 3d at 386-88.[5]

As the authority of the arbitrator emerges from the underlying contract, see Unite Here Local 217 v. Sage Hosp. Res., 642 F.3d 255, 259 (1st Cir. 2011), parties may agree in advance to require the arbitrator to issue a reasoned decision. Here, Plaintiffs expressly agreed *not* to require a reasoned decision unless both parties to the arbitration consented. As Ameriprise did not consent, the complaint fails to allege that FINRA breached a contractual duty.

### ORDER

The motion to dismiss is **ALLOWED** (Docket No. 9).

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge

---

[5]   Plaintiffs state that their "lawsuit is not an attack on the arbitration award." Thus, although they repeatedly suggest that they presented sufficient evidence at the hearing to prove Ameriprise's liability, the Court does not address whether the Federal Arbitration Act would permit it to vacate the arbitration award. See 9 U.S.C. § 10.

12